IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| REBECCA DARE BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:18-cv-00067 |
| | ) | |
| BEN CARSON, in his official capacity as | ) | By: Elizabeth K. Dillon |
| Secretary of the UNITED STATES | ) | United States District Judge |
| DEPARTMENT OF HOUSING AND | ) | |
| URBAN DEVELOPMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

On February 13, 2018, Rebecca Dare Brooks filed a complaint against Ben Carson, in his official capacity as Secretary of the United States Department of Housing and Urban Development (HUD), and Melinda S. Moore Housing, Inc. (MSM), asserting several violations of the lease between Brooks and MSM, HUD regulations, and the Virginia Residential Landlord Tenant Act (VRLTA). (Compl., Dkt. No. 2.) This matter is before the court on HUD's motion to dismiss the counts in which it is named—counts one, two, and eight—pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 10.) Since HUD filed its motion, Brooks filed, and the court granted, a motion to dismiss counts two and eight of the complaint. (Dkt. Nos. 37, 44.) Accordingly, the court need consider only whether to grant HUD's motion as to count one.

For the reasons set forth below, the court finds that HUD did not take any final action as required to waive sovereign immunity under the Administrative Procedures Act (APA) and will therefore dismiss count one against HUD for lack of subject matter jurisdiction.

I. BACKGROUND

At the time she filed her complaint, Brooks was sixty-six and relied on Social Security benefits and food stamps as her only income. (Compl. ¶ 3.) Her lawsuit stems from efforts by her landlord, MSM, to terminate her lease and evict her, allegedly in violation of Section 202 of the National Housing Act of 1959. 12 U.S.C. § 1701q.

As part of the Section 202 program, HUD contributes funding through capital advances to provide housing for low-income elderly individuals. *Id.* § 1701q(b). A landlord operating under Section 202 may enter contracts with HUD for project rental assistance, pursuant to which HUD pays a portion of rent for qualifying low-income individuals. *Id.* § 1701q(c). Brooks alleges that MSM used capital-advance assistance from HUD to build Melinda's Melody Apartment Complex (Melinda's Melody), where Brooks resided at the time of filing. (Compl. ¶¶ 6–9, 13.) MSM further entered a rental-assistance contract with HUD that ultimately helped pay for a portion of Brooks' rent. (*Id.* ¶¶ 7–14.) Brooks notes in her complaint that "HUD provides pervasive supervision of the operation of a Section 202 landlord," including oversight regarding "financial, conditions of tenancy, operations, physical condition of the project and maintenance." (*Id.* ¶ 8.)

On July 17, 2015, Brooks entered into a Section 202 lease agreement with MSM for an apartment at Melinda's Melody. (*Id.* ¶ 13.) The terms of the lease provide that "unless terminated or modified as provided for by the lease and HUD regulations, it will automatically renew and continue on the same terms." (*Id.* ¶ 16.) The lease "may only be terminated as provided for by HUD regulations," which allow termination for material noncompliance with the terms of the lease, failure to carry out obligations under state landlord and tenant law, criminal activity or alcohol abuse, and good cause. (*Id.* ¶¶ 17–18.)

During the fall of 2015, Brooks began voicing concerns over poor drainage at the apartment complex and potential mold issues in some of the units. Based on that concern and her belief that MSM was not acting to correct the issues, Brooks sent a constituent statement to Congressman Morgan Griffith on November 10, 2015. (*Id.* ¶¶ 24–25.) HUD responded to the constituent statement, and Congressman Griffith's office provide Brooks with a copy of the response and a phone number for Ron Fitch, a HUD employee. Brooks alleges that she attempted to contact Fitch and left him messages, but Fitch did not call her back. (*Id.* ¶ 32.)

In January 2016, Brooks received a notice that her lease was being terminated and that she had thirty days to vacate her unit. By a separate letter, MPM informed Brooks that she needed to remove plants and fish tanks from her unit, as they created a safety and health concern. Brooks' allegations indicate that after she received the termination letter, she followed up with MPM, MSM, and HUD about the termination. She further alleges that HUD received copies of the termination notice and that a HUD representative had been in contact with MPM regarding the termination of Brooks' lease and was involved in meetings regarding the termination. (*Id.* ¶¶ 39–48.)

Brooks did not move out of her apartment by the deadline in the termination letter, and MPM sent Brooks a notice that her lease would not be renewed. MPM instructed Brooks to vacate her unit by the end of July 2016. Brooks argues that MPM and MSM decided not to renew her lease after consulting with and under the supervision of HUD, and that their decision constituted a violation of Brooks' lease, HUD regulations, and the VRLTA. (*Id.* ¶¶ 52–54.) On June 30, 2016, Brooks filed a complaint for declaratory judgment in state court against MSM. (*Id.* ¶ 57.)

Brooks alleges that sometime between March 2017 and March 2018, HUD terminated payment of her Section 202 subsidy without notice or opportunity for hearing or appeal of that decision. She notes that "HUD had decided to no longer exercise forbearance and allow the subsidy to continue and was requiring MSM to pay back [$3,249.00]." (*Id.* ¶ 58.) HUD has not reinstated her subsidy or corrected MSM or MPM's failure to extend her lease.[1] Brooks thus points out that she may not be able to obtain another Section 202 or similar lease based on the lapse of benefits and may ultimately become homeless. She claims HUD knew or should have known of MSM and MPM's actions and should have ensured that its regulations were followed. (*Id.* ¶¶ 58–67.)

In count one of her complaint, Brooks seeks review of HUD's actions under the APA. Specifically, she argues that HUD violated the APA through actions or inactions taken regarding the non-renewal of Brooks' lease.[2] Accordingly, she seeks declaratory and injunctive relief prohibiting HUD from violating either its regulations or "guidance that provides for the procedures and cause for the non-renewal of Plaintiff's Section 202 tenancy and subsidy." (*Id.* ¶¶ 69–75.)

II. DISCUSSION

**A. Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the court's subject-matter jurisdiction over a plaintiff's claim. The plaintiff bears the burden of establishing

---

[1] It is unclear from the record in this case whether HUD still has not reinstated Brooks' subsidy payments. Count two of her complaint alleges that HUD failed to renew Brooks' subsidy; however, Brooks filed a motion to dismiss that count as moot. (Dkt. No. 37.)

[2] At the hearing on HUD's motion, counsel for Brooks represented that Brooks intended to allege in count one that HUD also failed to accommodate Brooks' disability. Brooks has requested that, if the court dismisses count one, she be allowed to amend her complaint to include allegations regarding HUD's failure to accommodate. Because Brooks omitted these allegations in her original complaint, the court will not consider them here. Brooks' request to amend is addressed below.

that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). In deciding a Rule 12(b)(1) motion, "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). It must, however, "view[] the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6)." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Dismissal under Rule 12(b)(1) is proper "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R.*, 945 F.2d at 768).

### B. The Court Lacks Subject-Matter Jurisdiction

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Where no other statute provides a private right of action, the 'agency action' complained of must be '*final* agency action.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. § 704). Without a final agency action, the court lacks subject-matter jurisdiction to review the alleged wrong. *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 454 (4th Cir. 2004) ("[W]e conclude that because the PTO's advertising campaign was not a final agency action . . . the district court had no subject matter jurisdiction to review it."); *see also Flue-Cured Tobacco Coop. Stabilization Corp. v. United States Envtl. Prot. Agency*, 313 F.3d 852, 857 (4th Cir. 2002) ("Other than agency action made specifically reviewable by statute, § 704 limits the APA's non-statutory right of judicial review to final agency action."). Agency action "includes the whole or a part of an agency rule, order, license,

sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Thus, "[b]oth an agency's failure to act and its affirmative actions are subject to review." *Sierra Club v. Larson*, 882 F.2d 128, 130 (4th Cir. 1989). However, the test for determining whether such action is final depends on whether a plaintiff alleges that the agency took an affirmative action or failed to act. *Compare Norton*, 542 U.S. at 62–63 (setting forth the requirements for determining whether a failure to act is actionable), *with Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (providing the conditions that, when met, constitute final agency action).

Brooks cites § 706 as the basis for count one of her complaint. Section 706 requires a district court to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and, if the court finds that any of the conditions provided in subsection (2) are met, to "hold unlawful and set aside agency action, findings, and conclusions," *id.* § 706(2). Although Brooks expressly sought review under § 706(2) in her complaint, counsel for Brooks clarified at the hearing on HUD's motion that Brooks also requests the court to compel action under § 706(1). Counsel further clarified that count one does not allege that HUD violated the APA by failing to renew Brooks' rental subsidy payments. Rather, count one's focus is the termination of Brooks' lease.

As for her claim under § 702(2), Brooks has failed to allege any affirmative final agency action by HUD. In *Bennett v. Spear*, the Supreme Court narrowed its finality analysis to two issues. *Bennett*, 520 U.S. at 177–78. "First, the action must mark the 'consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Id.* Brooks alleges that "HUD knew of and/or participated in the decision-making process of MPM, MSM, Reed and Moore, in deciding to not

6

renew Plaintiff's . . . tenancy." (Compl. ¶ 72.) She effectively argues that because a HUD representative took part in meetings with MSM and MPM in which they discussed Brooks' termination, HUD is responsible for the decision to terminate Brooks' lease.

Brooks cannot impute to HUD the actions of MSM and MPM. Throughout her complaint, Brooks refers to "[t]he non-renewal of her lease by MSM and/or MPM," (*id.* ¶ 62), and in fact alleges that "HUD has taken *no action* to intervene in the wrongful attempts by MSM, MPM, Reed, and Moore to terminate Plaintiff's . . . tenancy" (*id.* ¶ 66 (emphasis added)). Rather, Brooks' claim under § 706(2) appears to rely on HUD's mere participation in MSM and MPM's decisionmaking process. It can hardly be said that by receiving copies of MSM's termination notices and participating in phone calls or meetings during which Brooks' termination was discussed marked the "consummation of [HUD's] decisionmaking process." Thus, Brooks has failed to allege a final action by HUD subject to review by this court under § 706(2).[3]

To the extent Brooks argues HUD *failed to act* to prevent the termination of her lease, her action is better stated as one under § 706(1). As discussed above, the APA's definition of agency action includes a failure to act. And where an agency fails to act, § 706(1) grants a district court the authority to compel agency action. However, the Supreme Court has limited the application of § 706(1) to instances "where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64.

---

[3] Having found that Brooks' complaint fails the first prong of *Bennett*, the court need not determine whether HUD's actions affected Brooks' rights or obligations. Nonetheless, the court notes that there is no indication MSM and MPM would have decided to renew Brooks' lease without HUD's participation. Rather, MSM and MPM likely would have made the same decision. Thus, the determination of Brooks' rights likely "flowed" not from HUD's actions, but from the decision of MSM and MPM. *See Flue-Cured Tobacco Coop. Stabilization Corp.*, 313 F.3d at 861 ("[A]s a practical matter and of considerable importance, if we were to adopt the position that agency actions producing only pressures on third parties were reviewable under the APA, then almost any agency policy or publication issued by the government would be subject to judicial review.").

Here, Brooks alleges that HUD failed to intervene and prevent MSM from terminating her lease. Even assuming that this is the type of discrete action required under § 706(1),[4] Brooks has not alleged that any statute or regulation *requires* such action. Although she correctly notes that both HUD and Section 202 landlords must follow HUD regulations, and that HUD generally oversees Section 202 projects, she includes nowhere in her complaint allegations that HUD must intervene in landlord-tenant disputes or otherwise interfere in a landlord's decision not to renew a tenancy.

The closest Brooks comes to identifying such a requirement is when she states generally that "[t]he regulations adopted by HUD for the Section 202 program provide for procedural due process and substantive requirements prior to the termination or non-renewal of a tenant's subsidy and/or tenancy." (Compl. ¶ 70 (citing 24 C.F.R. §§ 247, 891).) However, she fails to point to a specific regulation on that point. Instead she cites generally to 24 C.F.R. §§ 247 and 891, even though the majority of those regulations define permissible conduct by *landlords*. The regulation most on point may be 24 C.F.R. § 891.450, which requires that "HUD shall conduct periodic on-site management reviews of the Owner's compliance with the requirements of this part." But Brooks does not argue that HUD failed to conduct an on-site management review of MSM. She instead argues that HUD failed to stop the termination of her lease. That is insufficient here.

In her response, Brooks points out that HUD regulations and HUD-issued handbooks prohibit the actions "taken by MSM."[5] (Resp. 13.) "All of these actions so clearly detrimental to

---

[4] *Norton* provides additional insight into what actions may be considered "discrete." There, the Supreme Court defined a "failure to act" as "a failure to take one of the agency actions . . . defined in § 551(13)." *Norton*, 452 U.S. at 62.

[5] Brooks includes this information in her response to HUD's assertion that enforcement of its regulations is committed to HUD's discretion by law. Nonetheless, it is relevant to the finality issue as well.

8

Plaintiff were in violation of HUD regulations, the Handbooks, the lease, as well as the agreements entered into by HUD and MSM, and the lease. HUD's response was to participate in those decisions and make no . . . attempt to correct or penalize MSM's actions." (*Id.*) She continues, noting that several of the statutory, regulatory, and HUD handbook provisions give HUD authority to penalize MSM for violating its obligation. Again, however, while HUD may have the authority to take action, none of the cited statutory or regulatory provisions require such action. *See* 12 U.S.C. § 1701q-1 ("[T]he Secretary *may* impose a civil money penalty . . . ." (emphasis added)); *id.* § 1735f-15 (employing the same permissive language). And, while Brooks suggests the HUD handbook "directs HUD administrators to follow a specific procedure" if MSM violated Section 202, the handbook does not have the same legal effect as the statute or regulations governing HUD. Similarly, there is no indication that HUD was a party to, and therefore bound by, the lease agreement between Brooks and MSM. (Dkt. No. 2-5 at 9–18.)

*Norton* plainly requires that a court compel agency action under § 706(1) only where the action is "legally *required*." *Norton*, 542 U.S. at 64. Because Brooks has not alleged that HUD failed to perform an action that it was legally required to take, she has not identified a "final action" that this court may review under § 706. Without final action, the court lacks subject matter jurisdiction over Brooks' claims against HUD. Accordingly, the court need not consider HUD's alternative theories for dismissal and will dismiss count one of Brooks' complaint as to HUD for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

## C. Leave to Amend

Brooks seeks leave to amend her complaint to correct jurisdictional errors and include her argument that HUD failed to accommodate her disability. Leave to amend should be granted unless "the amendment would be prejudicial to the opposing party, there has been bad faith on

the part of the moving party, or the amendment would have been futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). In this case, the court finds that any amendment would be futile and will therefore deny Brooks' request.

As stated above, Brooks' claim under § 706 fails, in part, because she ascribes to HUD actions taken by MSM and MPM. Similarly, while Brooks alleges that she "requested that a reasonable accommodation be reached regarding the fish and the fish tanks" in her unit, she merely alleges that HUD knew or should have known of her request and her underlying disability. (Compl. ¶ 55.) In fact, counsel for Brooks mailed a letter requesting a reasonable accommodation to MSM, not HUD. (Dkt. No. 2-9 at 12–13.) Again, Brooks seeks to hold HUD accountable for the decision of a third party.

Moreover, while Brooks alleges that HUD intervened after a different tenant requested an accommodation based on a disability (Compl. ¶ 28), she has pointed to no statute or regulation requiring HUD, rather than MSM, to take action.[6] For the same reason her current claim fails, so too would her claim for failure to accommodate—Brooks has given no indication that HUD's decision not to intervene was a final agency action. Accordingly, the court will deny Brooks' request for leave to amend her complaint as futile.

III. CONCLUSION

For the reasons stated above, the court will grant HUD's motion and dismiss HUD as a

---

[6] Notably, Brooks also alleged that the other tenant filed a fair housing complaint against MSM with HUD. (Compl. 28.) Brooks did not allege that she filed a similar complaint.

defendant in this case. The court will deny Brooks' request for leave to amend her complaint.

An appropriate order will be entered.

Entered: October 17, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge